ORTON VS. NOONAN and another.

Plaintiff in ejectment may rely upon an admission in the answer of title in his grantor prior to the date of his deed, and does not thereby admit the further allegations of the answer as to any grant of the same or other lands by the same grantor to the defendant.

Loose papers not part of a bill of exceptions. Printed bill cannot be accepted in lieu of the original.

APPEAL from the Circuit Court for *Racine* County.

Ejectment, for a piece of land described in the complaint as follows: "beginning at the south end of the mill race in the west line of lot 3, block 1, in the village of Humboldt, and running thence south 38½ degrees east, on the west line of said lot 3, to lot 4, thence westerly at right angles to said line of lot 3 about fifty feet, thence north 38½ degrees west, at right angles to the last mentioned line, to the mill race aforesaid, thence easterly along the end of said race to the place of beginning, being a part of that tract of land described on the plat of the village of Humboldt as 'reserved by proprietors,' being about fifty feet square, at the end of said race in sec. 9, T. 7, R. 22, in Milwaukee county." The answer contained, first, a general denial, and secondly, an averment that on the 13th of June, 1851, Erastus B. Wolcott, Talbot C. Dousman, Zelotus A. and Sanford D. Cotton were the owners and possessed of certain land in said section 9 and an adjoining section, and caused the same to be surveyed and platted, according to the statute, as the village of Humboldt, and afterwards, on the 17th of June, 1851, caused said plat, which was by them duly executed and acknowledged, so as to be by law entitled

to registration, to be recorded in the proper office, a copy of which plat is annexed to and forms part of the answer; that said proprietors immediately thereafter commenced selling to divers persons different lots according to said plat, with their appurtenances; and that afterwards, in the same year, said proprietors sold (according to the plat) and conveyed to the defendants the whole of lot 3, in block 1 in said village, and a strip twenty-five feet wide from each of the two lots immediately adjoining, viz: lots 2 and 4; that these lots were so sold to and purchased by defendants to be used for manufacturing purposes, and defendants have erected upon them a large paper mill, and are now using and occupying the premises for the purpose of manufacturing paper; that the strip of land represented upon said plat between the west line of said lots and the east line of River street, and marked upon said plat "reserved by proprietors," was by said proprietors laid out for the purpose of being used by the purchasers of said river lots for necessary purposes incident to the said manufacturing business to be carried on upon said lots, and that said proprietors notified persons purchasing said river lots, and especially the defendants, at the time of their purchase, that said strip of land marked "reserved," &c., was laid out for the purpose aforesaid; that at the time of making and recording said plat the proprietors dedicated said strip to be so used by the owners of river lots; that the premises described in the complaint are a portion of said strip adjacent to said real estate so owned by defendants, and are used by defendants for purposes incident to said manufacturing business, and to their paper mill, and not otherwise; that plaintiff's title to said premises, if any, was acquired by purchase of said proprietors after said dedication, and after the conveyance to the defendants of said river lots, and with notice of both; and that if plaintiff should assume exclusive occupation of that portion of said dedicated land adjacent to the premises pur-

chased by defendants, said last mentioned premises would be worthless for manufacturing purposes.

On the trial, plaintiff put in evidence a deed executed to him by Erastus B. Wolcott, Talbot C. Dousman, and Zelotus A. and Sanford D. Cotton, dated November 1, 1852. This deed is not given in the printed bill of exceptions, nor is it now on file in this court. One Trowbridge, a civil engineer, then testified for the plaintiff that he was familiar with block 1 in the village of Humboldt, and had made a survey of some of the lots in that block, and a map of the localities, which he produced, and the same was put upon file. "The parcel of land marked in red is a part of the premises which I surveyed; upon this a bleach house has been built by the defendants, twenty-one feet by twenty, and was occupied by them at the commencement of this suit, in connection with their paper mill, which it adjoins." The defendants thereupon admitted that they occupied said bleach house when this action was commenced. On cross-examination the witness said: "There is a wagon road passing in front and on the west side of the bleach house. This road is the only practicable means of approach and access to the paper mill on the west side, which is the business point of the mill. I know of no means of reaching this road except over the race on the bridge marked on my map, or through the bleach house, or by entering directly on the road where it comes down to the southwest corner of the mill below the race and the bleach house. The road is a wagon way eight to twelve feet wide, cut in the face of the rock from River street. The south line of the premises claimed in the complaint, as therein described, would reach past the bleach house, across the road, and into the bluff west of the road about 17 feet. The west side, if run at right angles to the south line, will not touch the mill race at all, but will run 27 to 29 feet west of it; and hence the north line as described in the complaint would not connect the west line with the point of beginning of the boundary in the east line." The plaintiff then offered in evi-

dence a plat, purporting to be a plat of the village of Humboldt; to the admission of which the defendants objected, on the grounds that it was not executed and acknowledged according to the statute; that it bore on its face evidence of recent alterations in the certificate of acknowledgment and in the attestation by witnesses; and that, in connection with Trowbridge's testimony, it showed the description in the complaint to be uncertain and impossible.     The plat was ruled out.   Plaintiff, as a witness in his own behalf, then testified that there was a village in Milwaukee county called Humboldt, with which he was familiar, and there was a mill race in it, and only one.   *Question.*—" Is there a plat of ground in that village generally known and described as block one ?" Objected to, on the ground that " the plaintiff, having alleged in his complaint a proper and legal plat of the village of Humboldt as a muniment of his title, must produce it, and secondary evidence is inadmissible until it is shown that such plat is lost, destroyed or in the hands of his adversary."   Objection sustained.   The plaintiff then testified:   "There is a tract of ground in that village commonly known as 'reserved by proprietors.'   There is a plat of that village, separating the territory into lots and blocks, which is commonly known and received by the inhabitants of the village as an accurate plat thereof.  It was made by the proprietors of the ground, and the territory of the village has been sold as lots and blocks according to that plat.   I have that plat in my hands."   The plat was then offered again in evidence, but ruled out for the same reasons as before.

The plaintiff then rested; and the court, on motion of defendants, granted a nonsuit.   From the judgment entered in ·pursuance of this order, the plaintiff appealed.

*E. Mariner*, for appellant:

The deed from the proprietors to the plaintiff, dated November 1st, 1852, under the admissions of the answer, proved the title to the whole village plat in the plaintiff.  *Sexton v.*

*Rhames*, 13 Wis., 99. And the testimony of Trowbridge identified the portion of lot designated on the plat " reserved by the proprietors," occupied by the defendants, as a part of the premises claimed in the complaint; to that extent therefore the plaintiff was entitled to recover. Subd. 5, sec. 14, chap. 141, R. S.—Counsel also argued that the court erred in excluding the plat offered.

*I. P. Walker*, for respondents, contended that the offer of the plat in evidence was properly rejected ; and if otherwise, the plaintiff was not injured, inasmuch as all the facts that could have been proven by the plat were admitted by the answer. 2. In ejectment the description of the premises must be such that possession may be delivered. If there is a trial, the description must be proved; or at least the location must be left certain, not rendered uncertain and much less rendered impossible. If the latter is done, there must be an amendment of the complaint, so that there may be a record to justify the writ of possession. Secs. 5 and 18, chap. 141, R. S.; 7 Vt., 190. 3. The plaintiff showed a deed to himself from Wolcott, Dousman &c., dated November 1, 1852. This was an admission in law that these grantors were common to himself and the defendants, and was an admission of the allegation in the answer that certain premises therein described, with their appurtenances, had, on the 7th of May, 1851, been conveyed to defendants by said grantors. This, with the testimony of Trowbridge, showed title in defendants to the paper mill site as alleged in the answer; and taking this fact in connection with the map and testimony of Trowbridge and the complaint, it is evident that when the plaintiff rested he had made out a clear case of dedication and of a right of way from necessity, to and in the defendants, of and in the premises claimed. 3 Bl. Comm., 36 and note; 3 Kent's Comm., 420 ; 2 Wend., 472 ; 8 id., 85 ; 11 id., 486 ; 14 Barb., 328 ; 1 Sandf., 323 ; 2 Abb. Dig., 377 ; 4 Smith (18 N. Y.), 109 ; 5 Seld., 246.

*By the Court,* COLE, J.    In our view many of the questions so fully discussed by the counsel for the respondents are not before us on this appeal.    The great burden of his argument was directed to establish the proposition that the entire strip of land marked upon the plat and described in the pleadings and evidence as "reserved by proprietors," was originally devoted by the proprietors for the perpetual use and accommodation of the owners of the river lots for all the purposes incident to any manufacturing business that should be carried on upon said lots.    And it being assumed that the case showed that the respondents own certain river lots adjoining this reserved strip, it was argued that they have the clear right and privilege to use the premises claimed as a passage way to their paper mill, and that this right or privilege passed as appurtenant to their lots, and became an integral part of the estate in them.    The difficulty however with this view of the case is, that there is no proof before us in respect to the respondents' title, or what their rights were in the river lots. The court granted a nonsuit, and the respondents were not called upon and did not in fact go into the question of their title.    The question is, can the nonsuit be sustained upon the evidence which was before the court in respect to the plaintiff's title, in connection with the admissions in the answer?    It appears to us not.

It was admitted in the answer that the title to the whole tract of land embraced in the plat of the village of Humboldt was in Wolcott, Dousman and the Cottons in June, 1851.    The plaintiff had an undoubted right to avail himself of this admission in the answer.    *Sexton v. Rhames*, 13 Wis., 99.    Both parties claim under the same grantors, and it was therefore sufficient for the plaintiff to prove the derivation of title from the common source.    This he did do by the deed which he introduced in evidence, bearing date November 1st, 1852. And it fully appeared, that the defendants were in the possession of the premises described in the complaint, which was a

portion of the reserved strip of land.    It is true they allege in their answer that they were the owners of certain lots adjacent to this reservation, and that they had the right to use such reservation for all purposes incident to any manufacturing business carried on upon their premises.    But while the answer is taken as true that both parties claim from a common source, and that the defendants are in possession of the premises claimed, it cannot be assumed without proof that the defendants are in possession under a good title as against the title made out by the plaintiff.    They allege that they hold under a prior conveyance from Wolcott, Dousman and the Cottons; but this obviously was matter of defense, to be established by proofs on the trial.    The allegations in the answer in respect to the defendants' title are not admitted to be true, as was assumed in the argument of the counsel for respondents, but are directly controverted and put in issue, as the pleadings now stand.    So that this whole question as to whether the original proprietors must be held to have dedicated this reservation to the use and accommodation of persons owning lots on the river adjacent to it, is not before us; since the defendants' title or relation to the property does not appear.

It was assumed by the counsel on both sides that the deed introduced on the trial by the plaintiff was properly before us. It was not however incorporated in the bill of exceptions, as it should have been ; and we have had some doubt whether we should consider it at all in disposing of the case.    We certainly should have disregarded it had any objection been taken that it was not properly incorporated in the bill of exceptions. The practice of sending up loose papers and treating them as a part of the bill of exceptions, without stipulations to cure the defect, is becoming quite too common, and cannot be approved by the court even if counsel take no objection to it. It is absolutely essential for a due administration of justice that more care should be exercised in perfecting the record of causes which come before us.    These remarks are made, not

so much with reference to the state of the record in the case now before us, as to correct a looseness of practice in preparing bills of exceptions which is becoming quite too prevalent among the profession. It is necessary to add a further remark, which is, that neither the original bill of exceptions, nor a certified copy thereof, is to be found in the record returned by the clerk. The counsel on both sides have however entered into a stipulation that the bill contained in the printed case be taken and considered as the bill of exceptions in the cause, the original having been lost or mislaid. We have therefore decided this cause upon the printed bill of exceptions. We shall not disregard such omissions in the future ; and if parties appealing desire us to look into the bill of exceptions, they must see to it that it is properly returned by the clerk with the record. Otherwise the cause will be disposed of as though no bill of exceptions had been settled.

The judgment of the circuit court is reversed, and a new trial ordered.